CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 10-2407, 11-2133

STEVEN J. THOROGOOD, individually and
on behalf of all others similarly situated,

        *Plaintiff-Appellee/Cross-Appellant*,

        *v.*

SEARS, ROEBUCK AND COMPANY,

        *Defendant-Appellant/Cross-Appellee*.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1999—**Harry D. Leinenweber**, *Judge*.

ARGUED APRIL 3, 2012—DECIDED MAY 1, 2012

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. This case is before us for the fourth time. In the third appeal arising out of a near-frivolous class action suit by Steven Thorogood, Sears Roebuck, the defendant, asked us to reverse the district court's denial of Sears' motion to enjoin a copycat class action suit filed by Martin Murray in a California state court and removed by Sears to a

federal district court in that state. Not only was it a copycat suit, but Murray had been a member of Thorogood's proposed (and certified, but later decertified) class, and was represented in his own suit by counsel who had represented Thorogood in the latter's class action suit. *Murray v. Sears, Roebuck & Co.*, No. 4:09-cv-5744-CW (N.D. Cal.). Judge Leinenweber, who had presided over Thorogood's suit and dismissed it, and to whom Sears submitted its motion for an injunction, denied the motion, ruling that Sears could obtain adequate relief against being harassed by repetitive litigation by pleading collateral estoppel in Murray's suit.

Sears appealed, and, its motion to dismiss Murray's class action suit as collaterally estopped by the judgment in Thorogood's suit having been rejected by the California district court, we reversed Judge Leinenweber and directed him to enjoin Murray's class action suit. He did, and Thorogood appealed. That is appeal No. 11-2133. Meanwhile, Thorogood had petitioned the Supreme Court for certiorari in the third appeal, No. 10-2407, in which we had ordered Judge Leinenweber to enjoin Murray's suit. So Thorogood was both asking us to dissolve Judge Leinenweber's injunction and asking the Supreme Court to vacate our decision that had directed him to issue the injunction.

The Supreme Court granted certiorari, vacated our decision ordering the district court to enjoin Murray's class action suit, and remanded the case to us for reconsideration in light of *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011), rendered after our decision. We have con-

Nos. 10-2407, 11-2133                                                3

solidated the proceedings on remand with Thorogood's appeal from the district court's injunction, as the two proceedings raise the common issue of the propriety of enjoining Murray's suit as a class action suit—he was always free to file an individual suit, because the merits of Thorogood's complaint about Sears' representations concerning its dryer were never determined, as we'll see, though we had expressed profound skepticism about the merits.

Sears' motion to enjoin had been based on the "All Writs Act," which authorizes a federal court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act has been interpreted to empower a federal court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977). This power "extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *Id*. at 174 (citations omitted). The district court had at our direction decertified Thorogood's class, 547 F.3d 742 (7th Cir. 2008), and it later dismissed his suit (an individual suit, no longer a class action, because of the decertification), and we had affirmed the dismissal. 595 F.3d 750 (7th

Cir. 2010). Sears argued that by filing the nearly identical Murray class action, Thorogood's lawyer had defied our decertification judgment.

Agreeing, we emphasized the quixotic nature of the quest on which Clinton Krislov, counsel for Murray (as formerly for Thorogood) and would-be class counsel (the California district court has not yet certified Murray's suit as a class action), had embarked. Thorogood had bought a clothes dryer from Sears (Murray too of course). The words "stainless steel" were imprinted on the dryer, and point-of-sale advertising explained that this meant that the drum in which the clothes are dried was made of stainless steel. Thorogood, a self-described "highly educated metallurgic engineer," claimed to have interpreted this to mean that the drum was made *entirely* of stainless steel, whereas part of the front of the drum—a part the user would see only if he craned his head inside the drum—was made of a ceramic-coated "mild" steel, which is not stainless steel because it doesn't contain the minimum amount of chromium required to classify a steel as being stainless. Thorogood alleged that the "mild" steel in the drum had rusted (even though it was coated with ceramic, which is rust-proof), and stained his clothes. He said he would not have bought the dryer had he not thought the drum made entirely of stainless steel and therefore rust-proof.

We held that his suit could not be maintained as a class action because there were "*no* common issues of law or fact." 547 F.3d at 747 (emphasis in original). It was inconceivable that all or even many other members

Nos. 10-2407, 11-2133 5

of the proposed class had the same understanding of Sears' advertising as Thorogood claimed to have. Sears hadn't advertised the dryers as preventing rust stains on clothes, doubtless because such stains are not a common concern of owners of dryers and because the more common dryer drum, which is made of ceramic, doesn't rust either—and remember that the small bit of "mild" steel in Sears' drum was coated with ceramic. The usual advertising claim for stainless steel drums has nothing to do with rust stains (because ceramic is rust-proof and staining caused by rust in dryers is a rare, and maybe a nonexistent, problem) but is rather that, for example, "Stainless steel drums are more durable than plastic or porcelain drums and won't chip, crack or scratch. They also have the smoothest finish and handle longer drying cycles better." Home Depot, "Dryers: New Models Handle Larger Loads in Less Time," www.homedepot.com/webapp/catalog/servlet/ContentView?pn=Dryers_Electric (visited Apr. 16, 2012). Some of Sears' ads do point out that stainless steel doesn't rust, but no one likes rust, whether or not the rust rubs off on clothes. And a few consumers who know that ceramic doesn't rust may not know that stainless steel doesn't rust either, since iron rusts and steel is made from iron—though steel subject to rusting could hardly be thought "stainless."

Consumers whose preference for stainless steel was unrelated to an anxiety about rust stains (almost certainly the vast majority) would not be upset to discover that an inconspicuous portion of the drum had been made of a different kind of steel that anyway was coated with

Case: 1:06-cv-01999 Document #: 217 Filed: 06/08/12 Page 6 of 12 PageID #:2501
Case: 10-2407 Document: 00711779477 Filed: 06/08/2012 Pages: 12

6                                                       Nos. 10-2407, 11-2133

ceramic and hence was rust-proof. One would have to have a neurotic obsession with rust stains (or be a highly imaginative class action lawyer) to worry about Sears' drum. We said that, judging from the record and the argument of his lawyer, the concerns expressed by Thorogood were a confabulation. 547 F.3d at 747-48. But those were peripheral observations. The important legal point was that there would be no economies from allowing his suit to be litigated as a class action because there would be no issues that could be resolved in a single, class-wide evidentiary hearing.

After we ordered the class decertified Thorogood's counsel told the district court that he wanted a judgment in his client's individual case, for however little money. He wanted it not only as a premise for an award of attorneys' fees but also so that he could use it as "offensive" res judicata in other cases (that is, to preclude Sears' defending similar cases on the merits); for he was already planning to circumvent our order decertifying the class by bringing class actions elsewhere. The California suit sought to be enjoined was thus foreordained. The judge declined to oblige him. Sears had made an offer of judgment that covered the statutory damages that were the only damages Thorogood was seeking in his individual capacity, and this mooted the case, which the judge therefore dismissed.

Although normally "'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process,' *Hansberry v. Lee*, 311 U.S. 32, 40

Nos. 10-2407, 11-2133                                             7

(1940) . . . [,] in a class action . . . a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation. See *id.,* at 41 . . . . Representative suits with preclusive effect on nonparties [thus] include properly conducted class actions." *Taylor v. Sturgell*, 553 U.S. 880, 884, 894 (2008). And so the district judge in California ruled initially that Murray was collaterally estopped to bring his suit as a class action. But after Murray amended his complaint to allege additional facts, in an effort to show that he had a different case, one more amenable to class action treatment than Thorogood's case had been, the judge reversed her earlier ruling and having thus rejected the defense of collateral estoppel allowed discovery to begin. Murray then issued bulky discovery requests to Sears.

We discussed at length in our decision ordering the district judge presiding over Thorogood's case to enjoin Murray's class action suit the extortionate character of the Murray suit, and more generally of class counsel Krislov's crusade against the Sears stainless steel dryer. We unsay nothing we said in that opinion, and in our other opinions in this protracted litigation, in criticism of the suits and of lawyer Krislov and his cocounsel (in Murray's case), Boling; nothing we said about the susceptibility of class action litigation to abuse; and no part of our statement that abuse of litigation is a proper ground for the issuance of an injunction under the All Writs Act. See *Green v. Warden*, 699 F.3d 364, 368 (7th Cir. 1983); *Miller v. Donald*, 541 F.3d 1091, 1096 (11th

Case: 1:06-cv-01999 Document #: 217 Filed: 06/08/12 Page 8 of 12 PageID #:2503
Case: 10-2407 Document: 00711779477 Filed: 06/08/2012 Pages: 12

8    Nos. 10-2407, 11-2133

Cir. 2008); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (per curiam); *Newby v. Enron Corp.*, 302 F.3d 295, 302-03 (5th Cir. 2002); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) (per curiam). Without such an injunction a defendant might have to plead the defense of res judicata or collateral estoppel in a myriad of jurisdictions in order to ward off a judgment, and would be helpless against settlement extortion if a valid defense were mistakenly rejected by a trial court—a mistake we thought (and think) the district judge in California had committed.

And so we ordered our district court to enter an injunction, and not only against Murray but also against the other members of Thorogood's decertified class so that additional Murrays wouldn't start popping up, class action complaint in hand, all over the country. We acknowledged that an unnamed class member (of whom there were some 500,000 in Thorogood's class) could be bound by the judgment in a class action suit only if "adequately represented by a party who actively participated in the litigation." *Taylor v. Sturgell*, *supra*, 553 U.S. at 884. But we noted that Thorogood had participated actively in seeking class certification and that his representation by lawyer Krislov had been adequate—indeed had been energetic and pertinacious to a fault. And we noted that the injunction would not preclude any of the class members from filing individual suits. For we had not ruled on the merits of any class member's claim. (Nor had the district judge, who dismissed Thorogood's claim on the ground of mootness, as we noted earlier.) All we had ordered en-

Nos. 10-2407, 11-2133                                                        9

joined was the filing by members of Thorogood's class, thus including Murray, and their lawyer Krislov, of class action suits indistinguishable, so far as lack of commonality among class members' claims was concerned, from Thorogood's.

We noted, finally, the grant of certiorari in *Smith v. Bayer Corp.*, 131 S. Ct. 61 (2010), to decide whether a district court, without running afoul of the Anti-Injunction Act, could enjoin a litigant from seeking class certification in state court when the district court had previously denied certification of a similar class under federal class action rules that differed from the state rules. We thought the answer might be "no" but doubted that the Supreme Court would go so far as to hold that injunctive relief against class action harassment is impermissible when the class action suits sought to be enjoined are suits in federal rather than state courts. But it seems we were wrong. The Supreme Court's decision—rendered after we ordered the injunction issued and the district court in compliance with our order issued it—although it does not refer to the All Writs Act, inclines us to doubt that Murray, not having been a party to the Thorogood suit, can nevertheless be bound by a ruling in it, including the ruling decertifying the class.

Sears' counsel has made heroic efforts to distinguish *Smith v. Bayer Corp.* from the present case, pointing out for example that the Anti-Injunction Act, 28 U.S.C. § 2283, limits the power of the federal courts to enjoin state litigation, see, e.g., *Chick Kam Choo v. Exxon Corp.*, 486 U.S.

140, 146-48 (1988), while the injunction in this case was issued under the All Writs Act, which authorizes federal courts to issue injunctions in aid of their judgments—including, according to the Supreme Court's *New York Telephone* opinion, cited earlier, injunctions against nonparties. But *Smith v. Bayer Corp.* says that "neither a proposed class action nor a rejected class action may bind nonparties. What does have this effect is a class action approved under Rule 23 [of the Federal Rules of Civil Procedure]." 131 S. Ct. at 2380. "Still less does that argument [that an unnamed member of a proposed but uncertified class is a party to the litigation] make sense *once certification is denied*. The definition of the term 'party' can on no account be stretched so far as to cover a person like Smith, whom the plaintiff in a lawsuit was denied leave to represent." *Id.* at 2379 (emphasis in original).

The Court did add that "we cannot say that a properly conducted class action existed at any time in the litigation," *id.* at 2380, and in this case there *was* a time—between the district court's certifying the class and our ordering it decertified—during which a class action "existed," though not it seems one that was "properly conducted," for the class was decertified on appeal. The meaning of "properly conducted" in this context is not as clear as it could be, but we think it implies that Murray never became a party to Thorogood's suit, and that being neither a party nor in privity with one, he could not be bound by the judgment in that suit. If the district judge had, as we held he should have, refused to certify the class, there would be no

Nos. 10-2407, 11-2133 11

obstacle to Murray's filing his own class action—and it would be odd if by virtue of a mistaken ruling by the district judge Murray is barred.

Furthermore, we now learn that during the interval in which a certified class existed in Thorogood's suit, the class members, including Murray, were not notified of its pendency. It is unlikely that he had never heard of it. But whether or not he had heard of it, he was never offered an opportunity to opt out of it; such an offer would have been contained in the notice he would have received had notice been sent to the class members, but it wasn't sent. Had he opted out he could not have been bound by our judgments, including our ruling decertifying the class, which is the ruling that the injunction that we ordered seeks to enforce against him. Denied the opportunity to opt out, he was not bound by our ruling and is therefore free to file his own class action against Sears. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The Supreme Court noted in *Smith v. Bayer Corp.* that "Bayer's strongest argument [for enjoining the Murray-type class action in that case] comes not from established principles of preclusion, but instead from policy concerns relating to use of the class action device." 131 S. Ct. at 2381. Indeed it's a strong argument because the policy concerns are acute, as explained at length and with many references in our previous opinions in this and other cases. But the Court rejected "this form of argument" (policy) as a justification for enjoining class action suits by class members who had never

become parties because it "flies in the face of the rule against nonparty preclusion." *Id*. The Court, which not infrequently bases decision on policy concerns, for they are legitimate tools for making rules of law, could have changed the rule of nonparty preclusion but decided to stick with it, and instead listed alternatives to preclusion: stare decisis, comity, consolidation of overlapping suits by the Panel on Multidistrict Litigation (not—yet—available in the dryer saga, because Murray's is the only pending suit, as far as we know, and available when filed in a state court only if the suit is removed to federal court, as Murray's suit was), changes to the Federal Rules of Civil Procedure, and federal legislation. Sears will have to tread one or more of these paths if it wants relief from this copycat class action and perhaps more such actions to come; we can't save it.

The district court is ordered to vacate the injunction.

5-1-12